FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 22, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM K.,[1] <br>                   Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>                 Defendant. | No. 1:19-cv-03200-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

### JURISDICTION

4  The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

### STANDARD OF REVIEW

6  A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation. *Id.*

17  In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674
F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an
ALJ's decision on account of an error that is harmless." *Id.* An error is harmless
"where it is inconsequential to the [ALJ's] ultimate nondisability determination."
*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's
decision generally bears the burden of establishing that it was harmed. *Shinseki v.
Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within
the meaning of the Social Security Act. First, the claimant must be "unable to
engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of not less than twelve
months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be
"of such severity that he is not only unable to do his previous work[,] but cannot,
considering his age, education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy." 42 U.S.C. §
1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

On November 10, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of November 1, 2016.[2]  Tr. 91, 194-99.  The application was denied initially, and on reconsideration. Tr. 124-32; Tr. 136-42.  Plaintiff appeared before an administrative law judge (ALJ) on May 2, 2018.  Tr. 31-61.  On September 10, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-30.

_____

[2] Plaintiff previously filed applications for benefits in 1999, 2001 and 2009, which were denied at the initial level and the Plaintiff did not pursue appeals.  Tr. 65. Plaintiff again filed for Title II and Title XVI benefits on January 9, 2013; that application was denied by an ALJ on May 24, 2015, Tr. 62-84, and by the Appeals Council on September 9, 2016, Tr. 85-90.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 10, 2016.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, bipolar disorder, anxiety related disorders, personality disorder, and obesity.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id*.  The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following limitations:

> [Plaintiff] can lift and/or carry up to twenty-five pounds occasionally and up to fifteen pounds frequently; stand, walk, and sit without limitation; never climb ladders, ropes, or scaffolds; occasionally crawl; and avoid concentrated exposure to vibration.  [Plaintiff] can perform simple, routine tasks and follow short, simple instructions. He can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period.  He can work in proximity to coworkers, but not in a cooperative or team efforts.  He requires a work environment that has no more than superficial interactions with coworkers.  [Plaintiff] requires a work environment that is predictable and with few work setting changes. He would not deal with the public, as in a sales position, or where the public is encountered frequently as an essential element of the work process.  Incidental contact of a superficial nature with the public is not precluded.

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's age,

ORDER - 7

education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as small products assembler, marker, and garment folder.  Tr. 25.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  *Id.*

On August 19, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-two analysis;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.  Whether the ALJ properly evaluated the medical opinion evidence; and

4.  Whether the ALJ properly evaluated lay witness evidence.

ECF No. 16 at 2.

ORDER - 8

**DISCUSSION**

**A. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify his peripheral neuropathy as a severe impairment.  ECF No. 16 at 3-6.  At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques.  20 C.F.R. § 416.921.  In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  *Id*.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to

ORDER - 9

do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking;

understanding, carrying out and remembering simple instructions; responding

appropriately to supervision, coworkers and usual work situations; and dealing

with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless

claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

The ALJ found Plaintiff's peripheral neuropathy and hand pain are not

medically determinable impairments.  Tr. 18.  While Plaintiff has reported hand

pain and diminished sensation, the ALJ found the objective evidence, including

---

[3] The Supreme Court upheld the validity of the Commissioner's severity

regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54

(1987).

1  Plaintiff's normal electromyography and nerve conduction study, did not establish

2  a source of the symptoms.  *Id.* (citing Tr. 426-36, 437-50, 451-53, 462-63, 465-70).

3       Plaintiff argues the ALJ erred because the source of Plaintiff's impairment is

4  irrelevant, and the ALJ should have found peripheral neuropathy to be a severe

5  impairment because Dr. Nyatsatsang diagnosed Plaintiff with peripheral

6  neuropathy and Dr. Jackson opined Plaintiff had workplace imitations due to his

7  peripheral neuropathy symptoms.  ECF No. 16 at 4-6.

8       Dr. Nyatsatsang saw Plaintiff in September 2017 for an infectious disease

9  appointment, after Plaintiff had a positive serology for syphilis.  Tr. 465.  At the

10  exam, Plaintiff reported left neck numbness, a shock-like sensation through his

11  thumb, and some numbness in his feet.  *Id.*  Dr. Nyatsatsang noted Plaintiff has

12  experienced peripheral neuropathy since 2012, though the etiology is unclear, and

13  noted Plaintiff saw Dr. Elliott for a "battery of tests for neuropathy," but did not

14  mention that all of the tests were normal.  *Id.*  Dr. Nyatsatsang diagnosed Plaintiff

15  with peripheral neuropathy.  *Id.*  He stated he was not convinced the symptoms

16  were due to syphilis complication, and though Plaintiff had a positive FTA

17  antibody test, Dr. Nyatsatsang believed this was a false positive.  Tr. 465-68.

18       Dr. Nyatsatsang's examination of Plaintiff does not contain any reference to

19  Plaintiff's sensation or pain related to neuropathy.  Outside of Plaintiff's visit with

20  Dr. Nyatsatsang, there are no references in any treating records to a diagnosis of

peripheral neuropathy; rather Plaintiff's reported symptoms are generally assessed as hand pain. Tr. 440-41, 443.  There are references to neuropathy as a symptom, but the reported symptoms are not accompanied by physical exams demonstrating any evidence of neuropathy. Tr. 428-29, 446.  Plaintiff's hand and wrist x-rays were normal, and his cervical x-ray showed only mild spondylosis with small osteophyte formation.  Tr. 443.  While the State agency found Plaintiff's neuropathy to be a severe impairment, the medical consultant, Dr. Rubio, opined Plaintiff did not have any manipulative limitations.  Tr. 112, 115.

Dr. Jackson completed a questionnaire in which she stated Plaintiff has hand pain and spasms that prevent him from being able to handle continuously and would cause him to miss four or more days per month.  Tr. 451-52. When asked to cite evidence of Plaintiff's condition, such as "relevant clinical findings, test results, etc.", Dr. Jackson cited only to Dr. Elliott's treatment records.  Tr. 451. Records from Dr. Elliott, a neurologist, state Plaintiff's labs, electromyography, nerve conduction study, and MRI of the cervical spine were all normal.  Tr. 453. Dr. Elliott noted Plaintiff reported numbness and spasms in his hands.  Tr. 325.  On exam in March 2016, Plaintiff had normal strength, sensation, gait, and reflexes, Tr. 326-27, though he had decreased sensation in his hands, with normal strength, in September 2016, Tr. 323.  Dr. Elliott assessed Plaintiff with bilateral hand numbness and pain of uncertain etiology and probable extrapyramidal side effects

1  from risperidone; he did not diagnose neuropathy.  Tr. 324, 327.  In September

2  2017, Plaintiff had decreased sensation in his hands and normal strength except

3  four out of five grip strength in his hands.  Tr. 453.  Dr. Elliott again diagnosed

4  "hand numbness and pain" of uncertain etiology.  *Id.*

5        While Dr. Nyatsasang diagnosed Plaintiff with peripheral neuropathy, a

6  diagnosis alone is not enough to establish a severe medically determinable

7  impairment at step two.  *See* 20 C.F.R. § 416.921.  The treatment records

8  demonstrate that Plaintiff reported symptoms of neuropathy, had mildly decreased

9  strength on one occasion, and decreased sensation at some appointments, but he

10  also had normal strength and sensation at other appointments.  The only

11  appointment where neuropathy was diagnosed was not accompanied by any

12  physical evidence of the condition, and the neurologist did not diagnose Plaintiff

13  with neuropathy.  Further, even if the condition is medically determinable, there is

14  no evidence outside of Dr. Jackson's opinion, which is addressed *infra,* of

15  Plaintiff's hand symptoms causing limitations, given the generally normal tests and

16  exams.

17        Additionally, the prior ALJ also found the evidence did not establish a

18  severe impairment related to Plaintiff's reported bilateral hand pain.  Tr. 68.  The

19  ALJ here properly considered the prior ALJ determination and adopted much of

20  the prior findings.  Tr. 15; *see Chavez v. Bowen,* 844 F.2d 691 (9th Cir. 1988).  As

ORDER - 13

1  such, the ALJ did not error in finding peripheral neuropathy is not a severe

2  medically determinable impairment.  Any error would be harmless as the step was

3  resolved in Plaintiff's favor, and Plaintiff has not demonstrated that peripheral

4  neuropathy created limitations not accounted for in the RFC.  *See Stout v. Comm'r*

5  *of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400

6  F.3d 676, 682 (9th Cir. 2005); *Shinseki*, 556 U.S. at 409-10.

7  **B. Plaintiff's Symptom Claims**

8       Plaintiff faults the ALJ for failing to rely on reasons that were clear and

9  convincing in discrediting his symptom claims.  ECF No. 16 at 6-14.  An ALJ

10  engages in a two-step analysis to determine whether to discount a claimant's

11  testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

12  "First, the ALJ must determine whether there is objective medical evidence of an

13  underlying impairment which could reasonably be expected to produce the pain or

14  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

15  "The claimant is not required to show that [the claimant's] impairment could

16  reasonably be expected to cause the severity of the symptom [the claimant] has

17  alleged; [the claimant] need only show that it could reasonably have caused some

18  degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

19       Second, "[i]f the claimant meets the first test and there is no evidence of

20  malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929 (c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 21.

First, the ALJ found the objective evidence is inconsistent with Plaintiff's symptom claims.  Tr. 21.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

The ALJ found Plaintiff had generally normal physical examinations and imaging.  Tr. 21 (citing Tr. 323, 338-42, 446, 453).  While Plaintiff has reported hand symptoms and limitations, his electromyography, nerve conduction study,

ORDER - 16

labs, imaging and physical exam were normal.  Tr. 326-27, 453.  As to his mental impairments, Dr. Cline's psychological examination demonstrated Plaintiff made some errors on serial sevens, but accurately completed serial threes, recalled three of three words immediately and two after a delay, and he had fair concentration. Tr. 21 (citing Tr. 314-20).  Plaintiff's mental status exams demonstrated some abnormalities, including impaired concentration and slowed thinking, but he also had a stable mood, denied depressive or manic symptoms, and he was cooperative. Tr. 21 (citing Tr. 427-28, 490, 512).

Plaintiff argues the objective evidence supports his symptom complaints. ECF No. 16 at 6-11.  While Plaintiff cites to evidence to support his argument the objective evidence supports his complaints related to peripheral neuropathy, the cited records include Plaintiff's testimony and self-report of hand symptoms, his normal electromyography/nerve conduction testing, normal labs, a cervical MRI that did not demonstrate any findings related to hand symptoms, and normal physical exams except grip strength of four out of five at one exam.  ECF No. 16 at 9 (citing Tr. 44-45, 323, 327, 453, 465, 467).  As discussed *supra,* the ALJ reasonably rejected Plaintiff's complaints regarding his hand symptoms.

Plaintiff also argues the objective evidence supports his mental health symptom claims.  ECF No. 16 at 9-11 (citing Tr. 346-47, 351, 353, 363, 367, 428-29, 476-77, 481-82, 488-91, 503-04, 512-13).  Plaintiff had circumstantial, slowed

ORDER - 17

1  thoughts, constricted affect, impaired attention/concentration, and depressive self-

2  deprecating thoughts, but he also generally had normal mood, memory, speech,

3  perception, intelligence, insight, judgment, motor activity, behavior, orientation,

4  and improved sleep.  Tr. 346-47, 351, 353, 363, 367, 428-29, 476-77, 481-82, 488-

5  91 (duplicative records); Tr. 503-04 (duplicative records); Tr. 512-13.  Dr. Cline's

6  exam found Plaintiff had only mild depression and anxiety symptoms, causing no

7  more than moderate limitations.  Tr. 316-17.

8      The ALJ reasonably found the objective evidence inconsistent with

9  Plaintiff's symptom claims.  While Plaintiff contends this was the only reason

10  given by the ALJ to reject his statements, this was one of three clear and

11  convincing reasons to reject Plaintiff's symptom claims, as discussed *infra.*

12      Second, the ALJ found Plaintiff's treatment inconsistent with his symptom

13  complaints.  Tr. 19, 21.  Evidence of "conservative treatment" is sufficient to

14  discount a claimant's testimony regarding the severity of an impairment.  *Parra v.*

15  *Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428,

16  1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is

17  evidence of conservative treatment sufficient to discount a claimant's testimony

18  regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d

19  1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the

20  claimant's "pain was not as all-disabling as he reported in light of the fact that he

ORDER - 18

did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Further, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Additionally, an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.

ORDER - 19

1    *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental

2    health treatment is partly due to a claimant's mental health condition, it may be

3    inappropriate to consider a claimant's lack of mental health treatment when

4    evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

5    F.3d 1462, 1465 (9th Cir. 1996).

6         Here, the ALJ found Plaintiff received only conservative treatment for his

7    impairments.  Tr. 19, 22, 24.  The ALJ reasoned Plaintiff did not require inpatient

8    treatment, nor emergency or urgent care.  Tr. 22.  Further, the ALJ found

9    Plaintiff's mental health symptoms improved with treatment.  Tr. 23.  Plaintiff

10   reported good control of his symptoms with medication, and reported improved

11   symptoms including a stable mood.  Tr. 21 (citing Tr. 427-28, 490, 512).  After his

12   reported improvement with treatment, Plaintiff did not receive further mental

13   health treatment for over a year.  Tr. 21, 24.

14        Plaintiff does not set forth any arguments as to the ALJ's finding that his

15   treatment was conservative in nature.  However, Plaintiff argues he did not have

16   improvement with treatment, as he had continued anxiety even with treatment.

17   ECF No. 16 at 9-11.  Plaintiff further argues the ALJ did not explain what specific

18   testimony is inconsistent with the evidence of improvement.  *Id.*  Plaintiff argues

19   the ALJ improperly considered his lack of mental health treatment but does not

20   provide any reasoning for the lack of treatment.  ECF No. 16 at 12-13.  Plaintiff

ORDER - 20

1    reported to Dr. Cline that he found counseling was "somewhat helpful in

2    controlling his anxiety" and he stopped seeing his counselor once he was "doing

3    ok." Tr. 315.

4         Although Plaintiff alleges only his depressive symptoms improved, the

5    treatment records indicate Plaintiff's medications and counseling also improved his

6    anxiety. Tr. 315, 489-90. Plaintiff reported that with medication, he had

7    improvement in his eating, sleep, relationship with his girlfriend, and he was

8    engaging in activities like walking his dog. Tr. 314, 489-90. The ALJ reasonably

9    found that Plaintiff's treatment history, including his improvement with treatment,

10   is inconsistent with his symptom allegations. This was a clear and convincing

11   reason to reject Plaintiff's symptom claims.

12        Third, the ALJ found Plaintiff made inconsistent statements about his

13   symptoms. Tr. 21-22. In evaluating a claimant's symptom claims, an ALJ may

14   consider the consistency of an individual's own statements made in connection

15   with the disability-review process with any other existing statements or conduct

16   under other circumstances. *Smolen*, 80 F.3d at 1284 (The ALJ may consider

17   "ordinary techniques of credibility evaluation," such as reputation for lying, prior

18   inconsistent statements concerning symptoms, and other testimony that "appears

19   less than candid.").

20

1    While Plaintiff alleges disabling mental health symptoms, the ALJ found

2  Plaintiff reported stable moods on multiple occasions and reported only mild to

3  moderate symptoms on questionnaires.  Tr. 21-22 (citing Tr. 430, 442, 474).   As

4  discussed *supra,* Plaintiff also reported improvement in his symptoms with

5  medication.  Plaintiff does not challenge the ALJ's finding and as such, any

6  challenge is waived.  *See Carmickle*, 533 F.3d at 1161 n.2.  The ALJ reasonably

7  found that Plaintiff's allegation of disabling mental health symptoms inconsistent

8  with prior reports of stability and mild to moderate symptoms.

9    The ALJ gave clear and convincing reasons to reject Plaintiff's symptom

10  claims.  Plaintiff is not entitled to remand on these grounds.

11  **C. Medical Opinion Evidence**

12    Plaintiff challenges the ALJ's evaluation of the medical opinions of Joanna

13  Kass, ARNP, and Caryn Jackson, M.D.  ECF No. 16 at 14-19.

14     There are three types of physicians: "(1) those who treat the claimant

15  (treating physicians); (2) those who examine but do not treat the claimant

16  (examining physicians); and (3) those who neither examine nor treat the claimant

17  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

18  *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

19  Generally, a treating physician's opinion carries more weight than an examining

20  physician's, and an examining physician's opinion carries more weight than a

ORDER - 22

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original);

ORDER - 23

*see* 20 C.F.R. § 416.913 (2013).[4]  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 416.913(d)(2013).[5]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1. Ms. Kass

Ms. Kass, a treating nurse practitioner, opined Plaintiff has mild difficulties in activities of daily living; moderate difficulties maintaining social functioning and moderate limitations in his ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; carry out very short, simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions;

---

[4] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

[5] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 24

complete a normal workday/workweek without interruptions from psychological symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; and marked  difficulties in maintaining concentration, persistence or pace and marked limitations in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Tr. 421-23.  Ms. Kass also opined Plaintiff would be off-task over 30 percent of the time in a 40-hour workweek, would miss four or more days per month, and his residual disease process has resulted in such marginal adjustment that even a minimal increase in demands or change in the environment would be predicted to cause Plaintiff to decompensate.  Tr. 423.

The ALJ gave Ms. Kass' opinion slight weight.  Tr. 23.  While Ms. Kass indicated that Plaintiff is treated by a treatment team, which has at least one member holding a doctorate in medicine or a PhD, only Ms. Kass, a non-acceptable medical source, signed the opinion.  Tr. 423.  Plaintiff argues the

ORDER - 25

1  specific and legitimate standard should apply, under *Gomez v. Chater*.  ECF No. 16

2  at 15.  However, *Gomez*, 74 F.3d 867, 871 (9th Cir. 1996), is no longer good law

3  regarding whether the opinion of an "other source," who is part of an

4  interdisciplinary team, is to be given controlling weight.  The holding in *Gomez*

5  was dependent on 20 C.F.R. § 416.913(a)(6)(1993), which stated that a "report of

6  an interdisciplinary team that contains the evaluation and signature of an

7  acceptable medical source is also considered acceptable medical evidence."  The

8  regulation was amended in 2000 to remove the language regarding

9  interdisciplinary teams, and the version applicable to this case contains no such

10  language.  20 C.F.R. § 416.913 (2013).  Following the amendment, courts have

11  found that opinions of non-acceptable medical source are not transformed into

12  acceptable medical evidence merely by the signature of an acceptable medical

13  source.  *See Vega v. Colvin*, No. 14cv1485-LAB (DHB), 2015 WL 7769663 (S.D.

14  Cal. Nov. 12, 2015); *Olney v. Colvin*, No. 12-CV-0547-TOR, 2013 WL 4525402,

15  at *4 (E.D. Wash. Aug. 27, 2013).  Instead, because the social security regulations

16  do not provide for the opinion of an "other source" to be given controlling weight

17  even if the other source is supervised by a physician or acts as part of an

18  interdisciplinary team, 20 C.F.R. § 416.913(d), Ms. Kass' opinion is still

19  considered an "other source" opinion and thus, the ALJ need only have provided

20  "germane reasons" for rejecting Ms. Kass' findings, *see Molina,* 674 F.3d at 1111.

ORDER - 26

First, the ALJ found Ms. Kass' opinion was not supported the objective evidence. Tr. 23. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041.

The ALJ summarized Ms. Kass' opinion, including the marked limitations and opinion that Plaintiff had marginal adjustment and would be off-task more than 30 percent of a workday. Tr. 23. The ALJ found the evidence does not demonstrate symptom exacerbation indicative of marginal adjustment or the inability to handle simple changes, and the records from Dr. Cline's evaluation and Ms. Kass' own treatment records demonstrate Plaintiff had fair attention, mood stability, and improved symptoms with treatment. *Id.* (citing Tr. 427). Although Ms. Kass opined Plaintiff had marked difficulty in maintaining attention and concentration, Dr. Cline found Plaintiff had fair attention and could perform serial threes. Tr. 23. As discussed *supra,* while Plaintiff had some abnormalities on

1  exam, he had many normal findings on mental status exams, had improvement

2  with treatment, and reported he discontinued treatment because he was doing well.

3  While Plaintiff argues the objective evidence is not inconsistent with Ms. Kass'

4  opinion, the ALJ's interpretation of the evidence is reasonable in finding the

5  treatment records are inconsistent with Ms. Kass' opinion that Plaintiff has

6  disabling mental health symptoms.  This was a germane reason to reject Ms. Kass'

7  opinion.

8      Second, the ALJ found Ms. Kass' opinion was not supported by Plaintiff's

9  treatment history.  Tr. 23.  An ALJ may discredit a claimant's symptom complaints

10 if the claimant fails to show good reason for failing to follow treatment

11 recommendations.  *Smolen,* 80 F.3d at 1284.  However, the fact that a claimant

12 fails to pursue treatment is not directly relevant to the weight of a medical

13 provider's opinion.  *See* 20 C.F.R. § 416.927(c).  But the consistency of a medical

14 opinion with the record as a whole is a relevant factor in evaluating a medical

15 opinion.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

16     The ALJ found Ms. Kass' opinion inconsistent with Plaintiff's periodic

17 medication management appointments, and his lack of symptom exacerbation at

18 any time.  Tr. 23.  As discussed *supra,* Plaintiff also discontinued mental health

19 treatment for over a year, after he reported improvement with treatment.  While

20 Plaintiff argues the ALJ did not properly consider any reason for his lack of care,

ORDER - 28

1    ECF No. 16 at 16, Plaintiff does not offer any explanation for the lack of treatment.

2    Plaintiff's treatment history, including his conservative treatment, period with no

3    treatment, and lack of exacerbation of his symptoms even without treatment, is a

4    germane reason to reject Ms. Kass' opinion.

5        Plaintiff argues the ALJ failed to address Ms. Kass' opinion that Plaintiff

6    had moderate limitations. ECF No. 16 at 14-16  Plaintiff argues this was a harmful

7    error as the vocational expert testified the moderate limitations were work-

8    preclusive. *Id.* (citing Tr. 57-58). While the ALJ summarized only the marked

9    limitations, the ALJ's analysis refers to the evidence of record not supporting Ms.

10   Kass' opinion as a whole, rather than specific portions of the opinion. As such, the

11   ALJ gave germane reasons to reject Ms. Kass' opinion.

12       *2. Dr. Jackson*

13       Dr. Jackson, a treating doctor, opined Plaintiff's hand pain and spasm

14   prevent him from being able to handle continuously and he would miss four or

15   more days per month due to his symptoms. Tr. 452. She opined Plaintiff's

16   limitations have existed since December 2012 and he has a good prognosis. *Id.*

17   The ALJ gave Dr. Jackson's opinion slight weight. Tr. 22. As the opinion is

18   contradicted, the ALJ was required to give specific and legitimate reasons,

19   supported by substantial evidence, to reject the opinion. *See Bayliss*, 427 F.3d at

20   1216.

ORDER - 29

Plaintiff challenged only one of the ALJ's three reasons for rejecting Dr.

Jackson's opinion.  ECF No. 16 at 19.  Thus, any challenge to the two unaddressed

findings is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits

issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir.

1998) (the Court may not consider on appeal issues not "specifically and distinctly

argued" in the party's opening brief).  However, the Court conducted an

independent review of the ALJ's analysis of Dr. Jackson's opinion and finds the

ALJ's reasoning is supported by substantial evidence in the record.

First, the ALJ found Dr. Jackson's opinion lacked a narrative explanation for

her opinion.  Tr. 22.  The Social Security regulations "give more weight to

opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.

"[T]he ALJ need not accept the opinion of any physician, including a treating

physician, if that opinion is brief, conclusory and inadequately supported by

clinical findings."  *Bray*, 554 at 1228.  While Dr. Jackson opined Plaintiff would

miss four or more days per month due to his hand symptoms, she did not provide

any explanation as to the cause of his symptoms, nor why he would miss these

days when the symptoms were managed with medication and he had a good

prognosis.  Tr. 22, 451-52.  Dr. Jackson indicated the medical records should be

reviewed for evidence of Plaintiff's symptoms, signs and diagnoses, however, the

ORDER - 30

records do not provide further support for Dr. Jackson's opinion, as further

explained *infra.* Tr. 451-52. This was a specific and legitimate reasons to reject

Dr. Jackson's opinion.

Second, the ALJ found Dr. Jackson's opinion is inconsistent with the

medical evidence. Tr. 22. A medical opinion may be rejected if it is unsupported

by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*,

278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. An

ALJ may discredit physicians' opinions that are unsupported by the record as a

whole. *Batson*, 359 F.3d at 1195. Moreover, an ALJ is not obliged to credit

medical opinions that are unsupported by the medical source's own data and/or

contradicted by the opinions of other examining medical sources. *Tommasetti*, 533

F.3d at 1041. The ALJ found Dr. Jackson's opinion was based on Plaintiff's hand

symptoms, although there is no medically determinable impairment to account for

the symptoms. Tr. 22. As discussed *supra,* the ALJ's finding that Plaintiff's hand

impairment is not a medically determinable impairment is supported by the record.

Further, the ALJ found Dr. Jackson's opinion is inconsistent with the medical

evidence, including the normal labs, tests, and imaging, and Dr. Elliott's

conclusion that Plaintiff's symptoms were due to an "uncertain etiology." *Id.,* Tr.

426-36, 437-50, 451-52, 453, 462-63, 465-70. While the medical records

demonstrate Plaintiff reported hand symptoms, the records generally demonstrate

ORDER - 31

little to no objective evidence of a hand impairment or ongoing limitations caused

by any hand impairment.  Tr. 323 (decreased sensation but normal strength); 326-

27 (normal strength, sensation and reflexes); Tr. 453 (decreased sensation, but

normal strength except a grip strength of four out of five).  This was a specific and

legitimate reason to reject Dr. Jackson's opinion.

Third, the ALJ found Dr. Jackson's opinion inconsistent with Plaintiff's

treatment history.  Tr. 22.  An ALJ may discredit a claimant's symptom complaints

if the claimant fails to show good reason for failing to follow treatment

recommendations.  *Smolen*, 80 F.3d at 1284.  However, the fact that a claimant

fails to pursue treatment is not directly relevant to the weight of a medical

provider's opinion.  *See* 20 C.F.R. § 416.927(c).  Further, the ALJ may discount a

physician's opinion that is inconsistent with the conservative nature of the

claimant's treatment.  *Rollins*, 261 F.3d at 856; *see also Parra*, 481 F.3d at 750-51

(treating pain with over-the-counter medication is conservative treatment);

*Garrison*, 759 F.3d at 1015 (casting doubt on characterizing epidural injections and

physical therapy as "conservative treatment").  "Any evaluation of the

aggressiveness of a treatment regimen must take into account the condition being

treated."  *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

The ALJ found Plaintiff received conservative treatment, without any

emergency, urgent or inpatient care.  Tr. 22.  Plaintiff's had symptoms were

ORDER - 32

1  managed with medication, Tr. 451, and there is no evidence his symptoms required

2  any emergency or urgent care, nor that any treatment was recommended beyond

3  medication. While Plaintiff was referred for additional testing, all of the testing

4  came back normal, as discussed *supra.* This was a specific and legitimate reason

5  to reject Dr. Jackson's opinion. Plaintiff is not entitled to remand on these

6  grounds.

7  **D. Lay Witness Evidence**

8      Plaintiff contends the ALJ improperly rejected the lay witness statement of

9  Angela Potter. ECF No. 16 at 19-21. An ALJ must consider the statement of lay

10  witnesses in determining whether a claimant is disabled. *Stout*, 454 F.3d at 1053.

11  Lay witness evidence cannot establish the existence of medically determinable

12  impairments, but lay witness evidence is "competent evidence" as to "how an

13  impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. § 416.913; *see*

14  *also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family

15  members in a position to observe a claimant's symptoms and daily activities are

16  competent to testify as to her condition."). If a lay witness statement is rejected,

17  the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d

18  at 1467 (citing *Dodrill*, 12 F.3d at 919).

19      Ms. Potter, Plaintiff's girlfriend, stated Plaintiff "most [sic] wouldn't be

20  likely to work" because of his depression, bipolar disorder, and primarily due to his

ORDER - 33

anxiety.  Tr. 233.  She stated Plaintiff independently cares for pets, handles his personal care but needs reminders to bathe, shave and sometimes to take medication, prepares his own meals daily, he has sleep issues, handles his own household chores and repairs though he needs reminders, he can go out alone and drive a car, shops for his own groceries, has difficulty managing his money, he has some difficulty with his hobbies of RC cars and watching television due to anxiety, he talks to his children on the phone but does not regularly socialize otherwise, he has difficulty with his memory, talking, completing tasks, concentration and using his hands, he can walk up to half of a mile before needing a thirty-minute break, he can pay attention for thirty minutes, he does not finish things he starts due to anxiety, he has difficulty understanding instructions, he does not handle change or stress well, he has some unusual behaviors, and he gets along well with others.  Tr. 234-39.  The ALJ gave greater weight to the objective medical evidence and opinion evidence he found credible than to Ms. Potter's statement.  Tr. 23-24.

First, the ALJ found Ms. Potter's statement inconsistent with the record.  Tr. 23-24.  Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony.  *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports).  The ALJ reasoned the medical records and

opinion evidence discredited the severity of the limitations set forth by Ms. Potter. Tr. 23-24.

While Ms. Potter stated Plaintiff cannot pay attention longer than thirty minutes, and struggles with some memory issues, completing activities and engaging in his hobbies, the ALJ considered evidence from several sources that indicated Plaintiff's mental health symptoms are not as limiting as alleged. Plaintiff had fair concentration during his exam with Dr. Cline, where he recalled three words immediately and two after a delay, performed five digits forward and three backward, and could not complete serial sevens but did complete serial threes. Tr. 21 (citing Tr. 314-20). At appointments with Ms. Kass, Plaintiff had impaired concentration, but generally no documented issues with memory and he reported control of his symptoms with medication. Tr. 21 (citing Tr. 427-28, 512). The State agency consultants opined Plaintiff is capable of sustaining simple, routine tasks, despite the limitations caused by his mental health symptoms. Tr. 22, 100-02, 116-18. The inconsistency between Ms. Potter's statement and the evidence of record was a germane reason to reject Ms. Potter's statement.

Second, the ALJ rejected Ms. Potter's statement that Plaintiff cannot work because it is an issue reserved to the Commissioner. Tr. 23. Opinions on the ultimate issue of disability are an issue reserved to the Commissioner. 20 C.F.R. § 416.927(c); *see also Wickramasekera v. Astrue*, No. CV 09-449-TUC-HCE, 2010

ORDER - 35

WL 3883241, at *34 (D. Ariz. Sept. 29, 2010) (applying regulation to lay witness testimony). The ALJ reasonably rejected Ms. Potter's statement as an issue reserved to the Commissioner. This was a germane reason to discredit this portion of Ms. Potter's statement. Plaintiff is not entitled to remand on these grounds.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 22, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36